IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLORIA BUTLER                    *

                 Plaintiff       *

            vs.                  *    CIVIL ACTION NO. MJG-12-2705

WELLS FARGO BANK, N.A.,          *
et al.,
                 Defendants      *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendants' Motion to Dismiss

[Document 9], and the materials submitted relating thereto.  The

Court has held a hearing and has had the benefit of the

arguments of counsel.

I.    BACKGROUND[1]

Plaintiff Gloria Butler (sometimes referred to as "Butler")

is the borrower under a Promissory Note secured by a Deed of

Trust on her residence, 204 Persimmon Circle, Reisterstown,

Maryland 21136 (the "Property").  Wells Fargo Bank, N.A. ("Wells

Fargo") is the mortgage servicer for the Property.  Buonassissi,

Henning & Lash, P.C. ("the Law Firm") is a law firm.

Butler failed to make the payments required by the

Promissory Note.

---

[1]    The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendants.

On February 16, 2007, a foreclosure action was filed[2] against the Property in the Circuit Court for Baltimore County, Maryland.  On July 26, 2007, Butler filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, which triggered an automatic stay of the foreclosure action.[3]  On March 7, 2008, Wells Fargo filed a motion in the Bankruptcy Court requesting relief from the automatic stay so that it could proceed to foreclose on the Property.

On June 13, 2008, the Bankruptcy Court, pursuant to the agreement of Butler and Wells Fargo, entered a Consent Order which provided that Wells Fargo would forbear from commencing foreclosure proceedings against the Property so long as Butler continued to make post-petition mortgage payments.[4]  Butler, however, again failed to meet her payment obligations.

---

[2]    In the Complaint, Plaintiff states that the foreclosure action was filed by the Law Firm at the direction of Wells Fargo.

[3]    In reviewing a 12(b)(6) dismissal motion, the court may "properly take judicial notice of matters of public record" without converting the dismissal motion into one for summary judgment.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Court filings are public records of which a federal court may take judicial notice.  See Witthohn v. Fed. Ins. Co., 164 F. App'x 395 (4th Cir. 2006).  Accordingly, even if not explicitly referenced in the Complaint, the Court will take judicial notice of certain documents filed in Butler's bankruptcy case as well as the state foreclosure action.

[4]    On July 19, 2011, Butler received a Chapter 13 discharge and, on November 8, 2011, the Bankruptcy Court closed Butler's bankruptcy case.

Consequently, pursuant to the Consent Order, Wells Fargo proceeded with the foreclosure action.  However, as represented by counsel to Defendants at the motion hearing, there does not appear to have been a final resolution of the state foreclosure action.[5]  Moreover, it appears that Butler still resides in the Property.

Butler filed the instant lawsuit asserting claims against Wells Fargo and the Law Firm for actions related to the aforesaid Promissory Note and foreclosure proceedings.  In the Complaint, Butler presents claims in two counts:

> Count I – Maryland Consumer Protection Act (Both Defendants)

> Count II – Maryland Real Property Code (Law Firm only)

By the instant motion, the Defendants seek dismissal of all claims.

Prior to the hearing on the instant motion, Butler conceded that all claims in Count II should be dismissed.  She further stated that the only claim she was pursuing against the Law Firm in Count I is the claim based upon the alleged "robo-signing" in connection with the foreclosure proceedings.

---

[5]      Therefore, there does not appear to be any present res judicata preclusive effect on the instant case flowing from that litigation.  See Anne Arundel Cnty. Bd. of Educ. v. Norville, 887 A.2d 1029, 1037 (Md. 2005) (explaining doctrine of res judicata only precludes subsequent litigation where "there has been a final judgment on the merits" in a prior action).

II.  <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[6] tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice.  <u>Id.</u>  A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'"  <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Twombly</u>, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u>  Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of

---

[6]    All "Rule" references herein are to the Federal Rules of Civil Procedure.

misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted).

Generally, a motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of an affirmative defense. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). It is possible to grant such a motion, however, if all the facts necessary to the affirmative defense are clearly alleged on the face of the complaint. Id.

III. DISCUSSION

A.   Claims Against the Law Firm

Plaintiff's only pending claim against the Law Firm is based upon her contention that some individual or individuals (unspecified) who were acting in some way as an agent of the Law Firm "robo-signed" some document or documents (also unspecified) having some connection with an Order to Docket (not attached to the Complaint) filed in state court in connection with the foreclosure proceedings.

Even if Butler had specified the individual or individuals and the document or documents involved, the Complaint would not

5

present any plausible claim against the Law Firm for a violation
of the Maryland Consumer Protection Act.

### 1.   Robo-Signing

Plaintiff makes the starkly conclusory allegation that
"Upon information and belief, [the Law Firm] engaged in robo-
signing in connection with the Order to Docket."  Compl.
[Document 2] ¶ 17.

The "information" upon which Plaintiff's "belief" is based
is:

> 17.1  The Order to Docket was filed on
> February 16, 2007.  As would later be
> revealed by various news media, during this
> time, many mortgage servicers and substitute
> trustees were filing affidavits and papers
> in foreclosure actions, where (a) the named
> affiants or signatories did not sign the
> documents or (b) the named affiants or
> signatories did not review or confirm the
> accuracy of the information asserted in the
> documents prior to signing them
>
> 17.2.  The above practices have become
> commonly known as "robo-signing", thus the
> term is used herein to refer to the above
> conduct
>
> 17.3 By its nature, robo-signing violates
> Maryland law, and renders the subject
> affidavits or papers non-compliant with the
> rules and statutes that require the
> affidavits and papers to be filed.
>
> 17.4. Additionally, robo-signing constitutes
> a misrepresentation in the collection of a
> consumer debt[.]   A signature on an
> affidavit or paper is a representation that

>       the named signatory or affiant signed the
>       same, and reviewed and confirmed the
>       accuracy of the information contained
>       therein.  Thus, a robo-signed document is by
>       its nature a false statement of fact[.]

Id.

The so-called "robo-signing" allegations provide a
quintessential example of the type of formulaic recitation that
is manifestly inadequate to present a plausible claim.  Although
the Complaint alleges generally that there have been media
reports about robo-signing, no such asserted reports, or
anything else contained in the Complaint, indicates that the Law
Firm (or any individual acting as its agent) engaged in this
activity.

Plaintiff's alleged belief that the Law Firm engaged in
robo-signing in connection with the foreclosure is
unrealistically based upon grossly inadequate information.
Accordingly, there is no plausible claim that the Law Firm
engaged in any robo-signing relating to the foreclosure on the
Property.


2.    Professional Services Exemption

Even if Plaintiff had adequately alleged "robo-signing" by
the Law Firm, she would not have a viable Maryland Consumer
Protection Act ("MCPA") claim.  Section 13-104(1) of Maryland's

7

Commercial Law exempts various professional services from the
MCPA, including the "professional services of a . . . lawyer . .
. authorized to do business in the State."  Md. Code Ann., Com.
Law § 13-104(1).

Butler contends that the exemption is inapplicable because
the Law Firm "acted as a Substitute Trustee, and not so much as
a lawyer" during the events at issue in the Complaint.  However,
Maryland courts apply the professional services exemption to
dismiss MCPA claims against an enumerated professional even when
the plaintiff has alleged the defendant acted "in some way other
than [his] professional capacity."  See Stewart v. Bierman, 859
F. Supp. 2d 754, 768 (D. Md. 2012) (dismissing MCPA claim
against defendant lawyers under professional services exemption
where lawyers acted as trustees in foreclosure proceedings
during events at issue in complaint); Robinson v. Fountainhead
Title Grp. Corp., 447 F. Supp. 2d 478, 490 (D. Md. 2006)
("Plaintiff contends that she did not sue Long & Foster because
of its activities as a realtor, but because it worked in
conjunction with the other defendants to establish the sham
company-Assurance Title. Plaintiff's allegations, nonetheless,
concern the 'professional services' of Defendants and this claim
will be dismissed."); see also Murray v. Bierman, Geesing, Ward
& Wood, LLC, RWT 11CV1623, 2012 WL 4480679, at *4 (D. Md. Sept.
27, 2012).

Butler states – without citation of any authority – that the professional services exemption is inapplicable to the Law Firm because it was not providing legal services to Butler. However, § 13-104(1) does not limit the exemption to instances where the professional service provider renders its services directly to the complaining party.

B.   Claims Against Wells Fargo

In the Complaint, Butler asserts that Wells Fargo violated the MCPA by making false or misleading representations to Butler regarding the status of her loan modification and the foreclosure action against the Property.

As best can be understood from Plaintiff's counsel's statements at the hearing on the instant motion, Butler is not presenting any claim based upon Wells Fargo's denial of a trial payment plan ("TPP") through the Home Affordable Modification Program ("HAMP").  Nor does she appear to be asserting that she complied with her payment obligations under the Promissory Note and/or the Bankruptcy Court Consent Order.  Thus, Plaintiff appears to present no contention as to Wells Fargo's entitlement to proceed with the foreclosure action and foreclose on the Property.

Rather, it appears that Plaintiff is making a claim based upon alleged false statements that misled her into a false

9

belief that she would obtain a loan modification and/or not lose title to the Property in the foreclosure proceedings and be subject to eviction.  This belief, she asserts, caused, or augmented, the mental anguish she suffered when she learned that she would not obtain the loan modification and learned the "true" status of the foreclosure action.[7]

At the hearing on the instant motion, counsel for Plaintiff asked for leave to file an amended complaint if necessary.  The Court finds that an amended complaint is necessary to clarify Plaintiff's claims against Wells Fargo.  As well stated by Judge Fawsett of the Middle District of Florida, "Plaintiffs in federal court are permitted to plead in the alternative . . . but they are not permitted to plead 'in the ambiguous.'"  J & J Sports Productions, Inc. v. Torres, 6:09CV391-ORL-19DAB, 2009 WL 1774268, at *3 (M.D. Fla. June 22, 2009) (internal citations omitted) (quoting Rule 8(d)).

In an amended complaint, Plaintiff shall present her Maryland Consumer Protection Act claims against Wells Fargo clearly, comprehensively, and unambiguously.  To the extent a claim is based upon statements made in documents sent to Plaintiff by Wells Fargo that are in Plaintiff's possession, she

---

[7]     I.e., the existence of court orders ratifying the foreclosure sale and awarding possession to the substitute trustees.

shall attach copies to the amended complaint rather than merely provide excerpts or paraphrases.


IV. <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendants' Motion to Dismiss [Document 9] is GRANTED.

2.   All claims against Defendant Buonassissi, Henning & Lash, P.C. are DISMISSED with prejudice.

3.   All claims asserted in the Complaint against Defendant Wells Fargo Bank, N.A. are dismissed without prejudice to the right of Plaintiff to file an amended complaint.

4.   Plaintiff shall, by February 8, 2013, file an Amended Complaint asserting her claims against Defendant Wells Fargo based upon the Maryland Consumer Protection Act consistent herewith.


SO ORDERED on <u>Friday, January 11, 2013.</u>


_____/s/_____
Marvin J. Garbis
United States District Judge