IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLORIA BUTLER                    *

          Plaintiff             *

          vs.                   *    CIVIL ACTION NO. MJG-12-2705

WELLS FARGO BANK, N.A.,          *

          Defendant             *

*     *     *     *     *     *     *     *     *

<u>MEMORANDUM AND ORDER RE: AMENDED COMPLAINT</u>

The Court has before it Defendant Wells Fargo Bank, N.A.'s
Motion to Dismiss Amended Complaint [Document 17], and the
materials submitted relating thereto.  The Court has held a
hearing and has had the benefit of the arguments of counsel.


I.    <u>INTRODUCTION</u>

Sometime prior to 2007, Plaintiff Gloria Butler
("Plaintiff" or "Butler"), the borrower on a Promissory Note
secured by a Deed of Trust on her residence, 204 Persimmon
Circle, Reisterstown, Maryland 21136 (the "Property") failed to
meet her payment obligations.  Defendant Wells Fargo Bank, N.A.
("Wells Fargo"), the mortgage servicer for the Property
commenced a foreclosure action.  Butler, represented by counsel,
filed a Chapter 13 case in the Bankruptcy Court, staying the

foreclosure action and ultimately[1] obtained a discharge of her debt. In 2008, Butler and Wells Fargo agreed to a Consent Order issued by the Bankruptcy Court whereby the foreclosure proceeding was halted provided that Butler kept current with post-petition payment obligations. Butler, again, failed to meet her payment obligations.

In the instant case Butler makes no claim that she was entitled to a loan modification from Wells Fargo. However, she seeks to recover from Wells Fargo because of statements allegedly made by its employees during the course of dealing with her unsuccessful efforts to obtain a loan modification.

II. <u>PROCEDURAL SETTING</u>

On July 13, 2012, Butler filed the instant lawsuit in the Circuit Court for Baltimore County, Maryland. The Complaint asserted claims against Wells Fargo and Buonassissi, Henning & Lash, P.C. (the "Law Firm"), for actions related to the aforesaid Promissory Note and foreclosure proceedings.

On September 12, 2012, the Defendants timely removed the case to federal court. By the Memorandum and Order Re: Motion to Dismiss [Document 14], the Court dismissed all claims against the Law Firm with prejudice and all claims against Wells Fargo

---

[1]    In 2011.

without prejudice [Document 14].  The Court granted Butler leave

to file an Amended Complaint, stating that Butler must:

> . . . [P]resent her Maryland Consumer
> Protection Act claims against Wells Fargo
> clearly, comprehensively, and unambiguously.
> To the extent a claim is based upon
> statements made in documents sent to
> Plaintiff by Wells Fargo that are in
> Plaintiff's possession, she shall attach
> copies to the amended complaint rather than
> merely provide excerpts or paraphrases.

Id. at 10-11.

On February 8, 2013, Butler filed the Amended Complaint

[Document 16] presenting a single count asserting claims against

Wells Fargo for violation of the Maryland Consumer Protection

Act based upon unfair or deceptive trade practices.

By the instant motion, Wells Fargo seeks dismissal of all

claims.


III. DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil

Procedure 12(b)(6)[2] tests the legal sufficiency of a complaint.

A complaint need only contain "a short and plain statement of

the claim showing that the pleader is entitled to relief, in

order to give the defendant fair notice of what the ... claim is

---

[2]    All "Rule" references herein are to the Federal Rules of
Civil Procedure.

and the grounds upon which it rests." <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  When
evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-
pleaded allegations are accepted as true and the complaint is
viewed in the light most favorable to the plaintiff.  However,
conclusory statements or a "formulaic recitation of the elements
of a cause of action" will not suffice.  <u>Id.</u>  A complaint must
allege sufficient facts to "cross 'the line between possibility
and plausibility of entitlement to relief.'"  <u>Francis v.</u>
<u>Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Twombly</u>,
550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  <u>Id.</u>  Thus,
if the well-pleaded facts contained within a complaint "do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not shown –
that the pleader is entitled to relief."  <u>Id.</u> (quoting <u>Ashcroft</u>
<u>v. Iqbal</u>, 556 U.S. 662, 679 (2009)) (internal quotation marks
omitted).

IV.  DISCUSSION

  A.  Chronology

  Prior to 2007                     Butler fails to pay on loan.

  February 17, 2007                 Foreclosure action commenced.

  July 26, 2007                     Butler files Chapter 13
                                    bankruptcy case.[3]  Automatic
                                    stay in effect.

  March 7, 2008,                    Wells Fargo files lift stay
                                    motion to proceed with
                                    foreclosure.

  June 13, 2008                     Bankruptcy Court Consent
                                    Order issued, halting
                                    foreclosure action so long as
                                    Butler continued to make
                                    post-petition mortgage
                                    payments.[4]

  Before 2009                       Butler fails to meet Consent
                                    Order payment obligations and
                                    foreclosure proceeded.

---

[3]     In reviewing a 12(b)(6) dismissal motion, a court may
"properly take judicial notice of matters of public record"
without converting the dismissal motion into one for summary
judgment.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180
(4th Cir. 2009).  Court filings are public records of which a
federal court may take judicial notice. See Witthohn v. Fed.
Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006).  Accordingly,
even if not explicitly referenced in the Amended Complaint, the
Court will take judicial notice of certain documents filed in
Butler's bankruptcy case as well as the state foreclosure
action.
[4]     On July 19, 2011, Butler received a Chapter 13 discharge
and, on November 8, 2011, the Bankruptcy Court closed Butler's
bankruptcy case.

| | |
|---|---|
| February 8 or 9, 2009 | Foreclosure sale of Property to Wells Fargo. |
| July 14, 2009 | State court ratifies foreclosure sale. |
| October 30, 2009 | State court ratifies auditor report. |
| March 2, 2010 | State court grants Wells Fargo's motion for judgment awarding possession of property to Wells Fargo. |
| March 31, 2010 | Butler files motion to vacate judgment awarding Property to Wells Fargo in foreclosure action on the basis of extrinsic fraud. |
| July 14, 2010 | State Court stays foreclosure action pursuant to Consent Order directing Butler to submit a "completed HAMP package" to Wells Fargo. |
| July 19, 2011 | Butler is discharged from loan liability. |
| November 8, 2011 | Bankruptcy case closed. |
| October 24, 2012 | State court dismisses foreclosure action, presumably for lack of prosecution. |
| January 8, 2013 | State court reopens foreclosure action at request of Butler and Wells Fargo. |
| February 6, 2013 | State court issues order denying Butler's motion to vacate. |

B.  Plaintiff's Claims

Butler does not assert any claim based on the position that
Wells Fargo was legally required to grant her the loan
modification that she wished.[5]  Rather, her claims are based on
the premise that Wells Fargo, through a series of false or
misleading oral and written representations, led her to believe
that it had approved (or would approve) her loan modification
request and would rescind certain actions taken in the state
foreclosure when, in reality, Wells Fargo never intended to
grant the loan modification or rescind any action in the
foreclosure.  According to Butler, Wells Fargo engaged in this
scheme to lull her "into a false state of comfort" in order to
prevent Butler from raising objections in the foreclosure
proceedings because "Wells Fargo believed it could avoid more
financial loss by foreclosing on the home rather than providing
Ms. Butler with a loan modification."  Am. Compl. ¶¶ 13-17.

Butler claims that Wells Fargo's misconduct caused her
"mental anguish, which manifested physically through vomiting,
headaches, sleep loss, and other physical symptoms."  Id. ¶ 29.

---

[5]     Butler, presently seeking appellate review in the
foreclosure proceeding, does not base any claim in the instant
case on Wells Fargo's action in the foreclosure proceedings.

1.  <u>The Statute Sued Upon</u>

The MCPA prohibits a person from engaging in "any unfair or deceptive trade practice" in "the collection of consumer debts." Md. Code Ann., Com. Law § 13-303(5). An "unfair or deceptive trade practice" includes any:

> False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers.

§ 13-301(1).

In regard to enforcement of the MCPA's prohibition on unfair or deceptive trade practices, a private person may file a complaint with the Attorney General and/or bring a private cause of action against the offending party. <u>See id.</u> § 13-408(a). A person who files a complaint with the Attorney General need not allege an actual injury occurred, but a person bringing a private cause of action must show actual injury or loss sustained as the result of a practice prohibited under the MCPA. See <u>Lloyd v. Gen. Motors Corp.</u>, 916 A.2d 257, 276-80 (Md. 2007). "Requiring actual injury in private suits strikes an important balance between two competing legislative objectives: preventing

unfair or deceptive practices while precluding aggressive,
'self-constituted private attorneys general' from bringing suit
'over relatively minor statutory violations.'" Marchese v.
JPMorgan Chase Bank, N.A., CIV.A. GLR-12-1480, 2013 WL 136427,
at *12 (D. Md. Jan. 8, 2013) (quoting Citaramanis v. Hallowell,
613 A.2d 964, 968 (Md. 1992)).

Actual injury or loss under the MCPA includes "emotional
distress and mental anguish" so long as "there was at least a
consequential physical injury" in the sense that "the injury for
which recovery is sought is capable of objective determination."
See Hoffman v. Stamper, 867 A.2d 276, 295 (Md. 2005). Thus, a
complaint will adequately plead damages under the MCPA when it
contains plausible allegations that the plaintiff relied upon
the defendant's false or misleading statements and suffered
actual loss or injury as a result of that reliance. See Green
v. Wells Fargo Bank, N.A., CIV.A. DKC 12-1040, 2013 WL 766196,
at *8-10 (D. Md. Feb. 27, 2013); see also Farasat v. Wells Fargo
Bank, N.A., CIV. WDQ-12-1276, 2012 WL 6649592, at *5-6 (D. Md.
Dec. 19, 2012); Stewart v. Bierman, 859 F. Supp. 2d 754, 768 (D.
Md. 2012).

2.  <u>The Representations Relied Upon</u>

The Amended Complaint contains particularized[6] allegations

that the following series of representations (collectively the

"Representations") made by Wells Fargo were false or misleading:


December 9, 2008                    Wells Fargo represented to ACORN
                                   Fair Housing, as the
                                   representative of Butler, that "a
                                   long anticipated loan modification
                                   had finally been approved."


End of February 2009               During a phone conversation
                                   between Butler and Wells Fargo[7],
                                   Wells Fargo informed Butler of the
                                   foreclosure sale of the Property
                                   and told Butler "not to worry
                                   about the sale, because she still
                                   qualified for the loan
                                   modification"; "the plan would
                                   just require some additional
                                   negotiation"; and "she absolutely
                                   would 'stay in the house.'"

---

[6]   Because Butler's MCPA claim sounds in fraud, it is "subject
to the heightened pleading standards of Federal Rule of Civil
Procedure 9(b), which requires a plaintiff to plead 'with
particularity the circumstances constituting fraud.'" <u>Spaulding
v. Wells Fargo Bank, N.A.</u>, 714 F.3d 769, 781 (4th Cir. 2013)
(quoting Fed. R. Civ. P. 9(b)).  "The circumstances include 'the
time, place, and contents of the false representations, as well
as the identity of the person making the misrepresentation and
what he obtained thereby.'"  <u>Id.</u> (quoting <u>Harrison v.
Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir.
1999)).
[7]   Butler asserts she does not recall the exact date of this
phone conversation.  Am. Compl. [Document 16] ¶ 19.

| | |
|---|---|
| Thereafter | "From that point forward" Butler "with the assistance from her financial advisor" spoke with Wells Fargo "once every few weeks" and submitted paperwork to Wells Fargo "in pursuit of the loan modification that Wells Fargo promised it would provide." |
| Between October 30, 2009 and January 2010[8] | After Butler received notice of the state court ratification of the foreclosure sale, Wells Fargo told Butler during a phone call to "disregard such communications because she was still working in good faith towards a loan workout." |
| December 1, 2009 | Wells Fargo mailed a letter to Butler "RE: An update on your request for assistance" providing: (1) "We're writing to let you know that we've received your request for assistance with your mortgage payments challenges"; (2) "Right now you don't have to do anything"; (3) "Continue to make your monthly mortgage payments"; (4) "Be aware that if your mortgage is in default, it will remain in default"; and (5) "Understand that all normal collection/foreclosure/bankruptcy processes may continue uninterrupted during this time period." |

---

[8]    Butler asserts she does not recall the exact date of this phone conversation.  Id. ¶ 22.

| | |
|---|---|
| January 26, 2010 | During a phone conversation between Butler and Wells Fargo, Wells Fargo told Butler "'You are approved'"; "'everything looks good'"; and "'we just need to work out the final figures.'" |
| March 8, 2010 | After receiving notice of the state court judgment in the foreclosure action awarding possession of the Property to Wells Fargo, Butler contacted Wells Fargo.  Wells Fargo told her not to worry "because all she had to do was write a letter to Wells Fargo kindly asking it to 'rescind the sale due to a technicality.'" |

Am. Compl. ¶¶ 18-28 (quoting Butler's Aff., Ex. 2).


### 3.  Adequacy of Allegations

Butler seeks recovery because, she says, she suffered mental anguish that manifested in physical symptoms as a result of her reliance on the veracity of the Representations.   The Amended Complaint alleges, in support of this theory:

> . . . Ms. Butler did rely to her detriment on the false or misleading statements by being lulled into a false state of comfort, taking time out of her life to submit paperwork to Wells Fargo and otherwise work closely with Wells Fargo in pursuit of the promised loan modification, and by giving up her rights to raise objections in the foreclosure action.

> As a direct and proximate cause of Wells
> Fargo's conduct, Ms. Butler suffered severe
> mental anguish, which manifested physically
> through vomiting, headaches, sleep loss, and
> other physical symptoms.

Am. Compl. ¶¶ 35.8, 29.

At the motion hearing, counsel for Butler clarified that the damages she seeks are for the mental anguish stemming from the false state of comfort she was induced into as a result of her reliance on the Representations.[9]

As noted above, a claim under the MCPA sounds in fraud, and is subject to the heightened pleading requirement of Rule 9(b). Marchese, 2013 WL 136427, at *12 (D. Md. Jan. 8, 2013). Although "Rule 12(b)(6) does not countenance dismissals based on

---

[9] Even if Butler were still seeking damages for filling out paperwork or foregoing action in the foreclosure proceedings, the Court would dismiss those claims. With respect to Butler's filling out paperwork and working with Wells Fargo in pursuit of the loan modification, the Amended Complaint contains no allegations that this resulted in "compensable loss, such as lost wages due to time away from work." See Green v. Wells Fargo Bank, N.A., CIV.A. DKC 12-1040, 2013 WL 766196, at *10 (D. Md. Feb. 27, 2013). The claim that Butler gave "up her rights to raise objections in the foreclosure action", is conclusory. See id. at *9. The Amended Complaint contains no allegations as to what action Butler would or could have taken in the foreclosure action absent the Representations and/or whether any such action could have been timely under applicable state law based upon the date of a particular Representation and occurrence in the state foreclosure proceedings.

disbelief of a complaint's factual allegations . . . conclusory allegations and unwarranted deductions of fact are not admitted as true." See Hawkins v. Upjohn Co., 890 F. Supp. 609, 611 (E.D. Tex. 1994) (internal citations and quotations omitted). Further, the Court need not "presume a plaintiff can prove any facts not alleged in the Complaint." DeJoy v. Comcast Cable Commc'ns Inc., 941 F. Supp. 468, 473 (D.N.J. 1996).

The allegations in the Amended Complaint relating to Butler's "false state of comfort" and emotional distress resulting therefrom are inadequate to present a plausible claim.

The Representations relied upon were made from December 8, 2009 through March 8, 2010. However, Butler does not allege when she fell into the "false state of comfort", when and or how she realized her comfort was, in fact, false, when it was that Wells Fargo ultimately denied her loan modification request, when Wells Fargo ultimately refused to rescind its actions in the foreclosure, and when she experienced the mental anguish and its physical manifestations on which she sues.

The failure to specify timing is significant because, as shown by the state foreclosure docket, Wells Fargo and Butler had dealings with respect to the loan modification and

14

foreclosure <u>after</u> the alleged Representations.  On March 31,
2010, 23 days after the last Representation, Butler filed the
motion to vacate the judgment of possession in the foreclosure
action, making similar allegations to those in the Amended
Complaint, and, according to the foreclosure docket, on July 14,
2010, the state court issued a consent order agreed to by Butler
and Wells Fargo that directed Butler to submit a "completed HAMP
package" to Wells Fargo.  [Document 17-1], Ex. A.  Thus, Butler
and Wells Fargo entered into a consent order four months <u>after</u>
the last Representation and Butler continued to deal with Wells
Fargo regarding a loan modification.

Butler's allegations regarding the status of her loan
modification process are also inadequate.  The state foreclosure
docket reflects that Butler sought a Home Affordable
Modification Program ("HAMP") loan modification from Wells
Fargo.  However, a HAMP loan modification process occurs in two
steps.  First the mortgage servicer determines whether the
borrower is eligible to participate in HAMP, and if yes, the
servicer may offer the borrower a Trial Period Plan ("TPP")
"during which the borrower pays reduced mortgage payments."
<u>Allen v. CitiMortgage, Inc.</u>, CIV. CCB-10-2740, 2011 WL 3425665,

at *1 (D. Md. Aug. 4, 2011). Second, if the TPP agreement is complied with, the borrower may then be offered a permanent loan modification. Id. The Amended Complaint is devoid of any allegations as to whether the loan modification Wells Fargo verbally advised it approved and/or was in the process of approving refers to a TPP agreement, the permanent loan modification that would come after compliance with a TPP agreement, or something else entirely.

In addition, the allegations are insufficient to present a plausible claim that Butler was in a "false state of comfort" that her loan modification had been approved. While Wells Fargo can be faulted for erroneous and inconsistent statements, it is hardly plausible to contend that Butler – faced with conflicting statements - could rely upon some and ignore contrary ones. In December 2008, Wells Fargo verbally advised that a loan modification had been approved; in February 2009, Wells Fargo advised Butler she "still qualified for the loan modification"; sometime after October 2009 Wells Fargo told Butler she "was still working in good faith towards a loan workout"; in December 2009 Wells Fargo sent a letter stating it is working to respond to her loan modification request; and finally in January 2010,

Wells Fargo again orally advised Butler that she was approved
for the modification, but the final figures needed to be worked
out.  Am. Compl. ¶¶ 18-28.  Throughout this two year time span,
Wells Fargo presented conflicting statements as to the status of
Butler's loan modification, i.e., approved, still qualified, in
progress, or processing the request.  Although the Court must
draw all reasonable inferences in favor of Butler, it is not
rational to conclude that she would, or could, draw any
reasonable inference other than that Wells Fargo's statements
could not be relied upon to tell definitely what the status of
her loan modification was.   See generally Green v. Wells Fargo
Bank, N.A., CIV.A. DKC 12-1040, 2013 WL 766196, at *8-10 (D. Md.
Feb. 27, 2013) (rejecting "false comfort" theory and dismissing
MCPA claim where complaint did not show that plaintiffs relied
upon the alleged misrepresentations and in the absence of any
clear reliance, claim of emotional distress caused by such
reliance was too tenuous).[10]

---

[10]    In Green v. Wells Fargo Bank, N.A., another case brought by
Plaintiff's counsel against Wells Fargo, the district court
addressed and rejected claims very similar to those being made
by Butler in the instant action. CIV.A. DKC 12-1040, 2013 WL
766196, at *4 (D. Md. Feb. 27, 2013).  In the Green case, the
plaintiffs likewise claimed that "through a series of
communications, [Wells Fargo] intentionally led Plaintiffs to

Of course, there are cases in which a plaintiff

Has adequately pleaded claims generally similar to those

asserted by Butler.  For example, in <u>Allen v. CitiMortgage,

Inc.</u>, the plaintiff claimed that after CitiMortgage approved her

TPP agreement and she began making the modified lower payments,

CitiMortgage made a series of inconsistent statements about the

status of the loan modification including cancellation of the

TPP agreement, delinquency notices, denial of the permanent loan

modification, a request for additional information for the loan

modification, as well as oral advisements to disregard certain

written communications.  CIV. CCB-10-2740, 2011 WL 3425665, at

*2, 9 (D. Md. Aug. 4, 2011).  During the relevant time,

CitiMortgage reported to the credit agencies that Allen's

mortgage payments were delinquent, despite her payments under

the TPP agreement.  <u>See</u> <u>id.</u> at *3.  Based upon these

allegations, the district court found that Allen's claim of

damage to her "credit score, emotional damages, and forgone

alternative legal remedies to save their home" was sufficient to

believe their loan modification request was being considered
when, in fact, it never intended to process their application or
to modify their loan . . . the purpose of this scheme was to
lead them 'into a false state of comfort.'"  <u>Id.</u> at *4.

18

state a claim of actual loss at the dismissal stage. Id. at
*10.

In Marchese, after the plaintiff entered into a TPP
agreement with the servicer and made the required payments, the
servicer refused to honor the TPP agreement and when the
plaintiff reapplied for a loan modification and made payments in
the exact amount requested by the servicer in order to reinstate
his loan, the servicer returned the payments indicating the
amount was insufficient, but then provided verbal communication
the submitted payment was in the correct amount. CIV.A. GLR-12-
1480, 2013 WL 136427, at *2-3 (D. Md. Jan. 8, 2013). The
plaintiff claimed that as a result of the servicer's actions, he
suffered emotional and physical distress, bogus late fees,
attorney fees, and damage to his credit. Id. at *12. Based
upon those factual allegations, the district court found the
plaintiff had sufficiently pleaded actual injury or loss as the
result of the servicer's conduct. See id.

In Piotrowski v. Wells Fargo Bank, N.A., the district court
found the plaintiff had stated a plausible claim under the MCPA
that Wells Fargo's representations and omissions mislead him
into believing he "was actually being considered for a permanent

19

loan modification" where Wells Fargo had made several inconsistent statements about the status of his loan modification requests before and after the plaintiff entered into a temporary forbearance agreement and made lowered payments thereunder. CIV.A. DKC 11-3758, 2013 WL 247549, at *12-13 (D. Md. Jan. 22, 2013). Though the district court expressed skepticism as to whether the plaintiff would be able to prove his damages were "the result of being deceived into believing Wells Fargo was actually considering his modification requests (as opposed to, for example, Well Fargo's ultimate refusal to grant [plaintiff's] request for a permanent loan modification)", the court found averments that plaintiff suffered damage to his credit, lost time from work, and emotional distress adequate to survive a dismissal motion. Id.

The Court finds the instant case to present a determinatively different situation than those presented in Allen, Marchese, and Piotrowski. In each of those cases, the plaintiff had made payments under a TPP agreement or other modified plan, received inconsistent communication from the mortgage servicer regarding a permanent modification or loan reinstatement, and claimed to have suffered resulting injury in

the form of lower credit scores, lost time at work, and emotional distress.

In sum, the Court finds that the Amended Complaint fails to allege facts sufficient to present a plausible claim that the alleged Representations caused actual injury or loss upon which Butler could base a claim under the MCPA.

V.    CONCLUSION

For the foregoing reasons:

1.    Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Amended Complaint [Document 17] is GRANTED.

2.    Judgment shall be entered by separate Order.

SO ORDERED, this Monday, July, 22, 2013.

_____/s/_____
Marvin J. Garbis
United States District Judge